UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BARBARA SOPKIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 24-0743 (TSC) |
| ) | |
| ) | |
| JOHN LOPATTO, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION**

This action, filed by Plaintiff Barbara Sopkin, *see generally* Compl., ECF No. 1-1 at 3–35, proceeding *pro se* and *in forma pauperis* ("IFP"), was removed to this District from the Superior Court of the District of Columbia, by Defendant John Lopatto, *see* Def.'s Not. of Removal ("NOR"), ECF No. 1.  Lopatto then filed a Motion to Dismiss ("MTD"), ECF No. 8, and supporting Memorandum ("MTD Mem."), ECF No. 8-1, which Sopkin opposes, *see* Pl.'s Opposition to MTD ("Opp'n to MTD"), ECF No. 12, and moves to strike, *see* Pl.'s Mot. to Strike ("MTS"), ECF No. 14.  Sopkin has also filed a Motion for Partial Summary Judgment ("MPSJ"), ECF No. 16, and a Motion to Remand to Superior Court ("MTR"), ECF No. 17, both of which are opposed by Lopatto, *see* Def.'s Opposition to MPSJ, ECF No. 19; Def.'s Opposition to MTR, ECF No. 20.  For the reasons explained below, Sopkin's Motion to Remand is granted.  The remaining motions are all held in abeyance for resolution by the Superior Court.

## **BACKGROUND**

This is not the first matter involving these parties; this case is the fifth action overall, and now the second lawsuit by Sopkin against Lopatto in this District.[1]

Lopatto is a citizen of Virginia who maintains a law firm in the District of Columbia, and previously represented Sopkin, an Israeli citizen, as an assignee of Interlase, L.P., in three separate lawsuits. *See id.*; NOR ¶¶ 13–14; Compl. at caption, ¶¶ 1, 15, 67; Compl. Ex. 20, ECF No. 1-1, at 81–38 (Fee Agreement, dated Dec. 15, 2016) ("FA I"); Compl. Ex. 21, ECF No. 1-1, at 84–86 (Fee Agreement, Dated Aug. 27, 2021) ("FA II"). In *Sopkin I*, *II*, and *III*, Sopkin challenged the management of Interlase, a Georgia limited partnership that once held a corporate license agreement for specialized catheter patents in exchange for royalties. *See Sopkin*, 2023 WL 5833679, at *1–4. Sopkin purports to have long maintained an ownership interest in Interlase, originally conveyed to her by Lucre Investments, Ltd. *See Sopkin*, 2023 WL 5833679, at *1–4. In those three lawsuits, Sopkin alleged that Interlase's former receiver, Richard Mendelson, failed to extend Interlase's patents, negligently under-collected royalty payments, and permitted licensees to under-report the sales upon which those royalties were calculated, costing Interlase millions of dollars. *See id.*

None of those lawsuits were decided in Sopkin's favor, and on October 27, 2022, she filed *Sopkin IV* against Lopatto in this District, raising claims for legal malpractice based on diversity jurisdiction, and alleging that, due to ineffective legal strategy, namely, failure to raise a

---

[1] *See Sopkin v. Lopatto*, No. 22-cv-03300, 2023 WL 5833679, at *2–5 (D.D.C. Sept. 8, 2023) ("*Sopkin IV*") (memorializing litigation history); *see also Sopkin v. Mendelson, et al.*, No. 16-cv-01146, 2017 WL 1536434 (E.D. Va. Apr. 27, 2017) ("*Sopkin I*"), *aff'd*, 746 Fed. Appx. 157 (4th Cir. 2018) (per curiam); *Sopkin v. Mendelson, et al.*, No. 19-cv-58, 2019 WL 13251310 (E.D. Va. May 2, 2019) ("*Sopkin II*"), *aff'd*, 847 Fed. Appx. 197 (4th Cir. 2021) (per curiam); *see Sopkin v. Mendelson, et al.*, No. CL-20004925-00 (Arlington Co. Cir. Ct. filed Dec. 1, 2020) ("*Sopkin III*").

"surcharge theory" under Virginia law, Lopatto was responsible for her inability to recover Interlase's $11,963,416 in lost patent-royalty payments. *See id*. at *5. She also claimed that Lopatto owed her for sanctions totaling $62,854.24, entered against her by the United States District Court for the Eastern District of Virginia in *Sopkin I*, because of allegedly frivolous claims he advanced on her behalf. *See id*.; *see also Sopkin*, 2022 WL 4002310 (E.D. Va. Sept. 1, 2022) (entering sanctions), *aff'd*, No. 22-1992, 2024 WL 1108825 (4th Cir. Mar. 14, 2024).

On September 8, 2023, this court entered a Memorandum Opinion and Order granting Lopatto's Motion to Dismiss, dismissing the matter in full for want of subject matter jurisdiction. *See id*. at *11. In its Memorandum Opinion, the court detailed the relevant factual and procedural history, *see id.* at *1–4, and that Opinion is incorporated in full by reference herein,[2] *see id.* at *1–11.

In short, the court held that, despite holding herself out as the sole owner of Interlase, Sopkin could not recover the $11,963,416 in lost patent-royalty payments because, if they were owed, they belonged entirely to the entity. *See id.* at *6–9. First, the court found that Sopkin was prohibited from bringing *any* claims on behalf of Interlase. *See id*. at *7, *9. Three previous courts—the United States Court of Appeals for the Fourth Circuit, the Eastern District of Virginia, and the Arlington County Circuit Court—all previously ruled that Sopkin lacked standing to raise claims for Interlase. *See id*. at *7. More specifically, those courts found that

---

[2]  A court may "take judicial notice of related proceedings and records in cases before the same court." *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 59 (D.D.C. 2010) (quoting *Brewer v. Islamic Rep. of Iran*, 664 F. Supp. 2d 43, 50–51 (D.D.C. 2009); *Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229, 267 (D.D.C. 2006); citing Fed. R. Evid. 201(b); *Booth v. Fletcher*, 101 F.2d 676, 679 n.2 (D.C. Cir. 1938) ("A court may take judicial notice of, and give effect to, its own records in another but interrelated proceeding[.]") (other citation omitted)), *cert. denied sub nom. Fletcher v. Booth*, 307 U.S. 628 (1939).

Sopkin was so prohibited due to an injunction entered by the Arlington County Circuit Court on December 18, 1998, declaring Lucre a sham entity, and enjoining Lucre, its officers, managers, directors, and agents, from claiming to be Interlase's partner, or taking any actions on its behalf. *See id*. at *1, *3. There was also no evidence to suggest that later conveyances (including those executed by the inventor and founding partner, Dr. Fox) afforded Sopkin any legal or beneficial interest in Interlase, or that she was otherwise qualified to bring a derivative suit. *See id*. at *3. Because the issue of Sopkin's standing had been repeatedly previously litigated, this court found that Sopkin was collaterally estopped from relitigating the issue. *See id*. at *7.

Second, and notwithstanding the hurdle of collateral estoppel, this court found that Sopkin could not sue on behalf of Interlase due to the "shareholder standing rule." *See id*. The court noted that no shareholder, not even a sole shareholder, has standing to sue in an individual capacity on a claim that belongs to the entity, and that prohibition extends to sole owners of limited partnerships. *See id*. at *6–7. Because the $11,963,416 in damages claimed by Sopkin arose "directly from injuries sustained by Interlase—in fact, they were sustained entirely by the entity—they d[id] not fall within any exception of the shareholder standing rule and . . . . [could not] survive as pleaded, regardless of whether they [were] brought as a direct or derivative suit against Mendelson, or whether they [were] brought as a derivative or direct legal malpractice suit against Lopatto." *Id.* at *7.

Third, the court found that Sopkin could neither join nor substitute Interlase as a plaintiff. *See id*. at *8. Because Sopkin was proceeding *pro se*, she was ineligible to sue on behalf of Interlase, and Interlase itself, as an artificial entity, could neither proceed *pro se*, nor apply to proceed IFP. *Id.* at *9.

Finally, the court found that Sopkin appeared to have standing to bring her last remaining claim for the sanctions-related damages because they were entered against her individually. *Id.* at *9. But those damages fell $12,000 short of the $75,000 threshold required to establish diversity jurisdiction. *Id.* For all these reasons,[3] *Sopkin IV* was dismissed pursuant to Federal Rule 12(b)(1). *Id.* at *11.

Sopkin appealed, and on January 23, 2024, the United States Court of Appeals for the District of Columbia Circuit affirmed. *See Sopkin*, No. 23-7115, 2024 WL 251537 (D.C. Cir. Jan. 23, 2024) (per curiam) ("Mandate"). About two weeks later, on February 9, 2024, Sopkin filed the instant matter against Lopatto in Superior Court, raising substantially similar claims to those raised in *Sopkin IV*. *See generally* Compl. Sopkin again alleges that Lopatto committed legal malpractice, demanding both the lost royalty payment damages—totaling $11,963,416, and an award for the sanctions entered in *Sopkin I*—totaling $62,854.24. *See id.* ¶¶ 1–4, 14–15, 31–37, 40–44, 54–55, 57–72, 75–80, 83–84.

New, however, are Sopkin's claims that Lopatto allegedly breached their fee agreements and committed fraud, in failing to pay (1) $30,000 in fees owed to Megan Nelson, CPA, an accounting expert retained in 2021 in *Sopkin III*, *see id.* ¶¶ 54, 66, 81; Compl. Ex. 10, ECF No. 1-1, at 124–39 (Report of Megan Nelson, dated Nov. 5, 2021) ("Nelson Rep."), and (2) $15,000 owed to Interlase, somehow relating to arbitration proceedings it initiated against Lopatto in the London Court of International Arbitration ("LCIA") in early 2022, *see* Compl. ¶¶ 38, 40, 82.

---

[3] The court also alternatively found that, even if Sopkin had established subject matter jurisdiction, *Sopkin IV* should have been filed in the Eastern District of Virginia. *See id.* at *10–11.

5

Finally, Sopkin presents a new legal theory, based on some new facts. *See id.* ¶¶ 2–6; Opp'n to MTD at 2–5, 11–13. She contends that from October 25, 2022 to January 24, 2024, she was the legal owner of Interlase's patent rights and assumed the right to sue for any of the entity's losses, as a result of a deed of gift executed between them on October 25, 2022. *See id.*; Compl. Ex. 23, ECF No. 1-1, at 76–77 (Oct. 25, 2022 Deed of Gift) ("Deed I"). Then, on January 24, 2024, Sopkin conveyed those rights back to Interlase through a second deed of gift, *see* Compl. ¶¶ 2–6; Compl. Ex. 25, ECF No. 1-1, at 69–70 (Jan. 24, 2024 Deed of Gift) ("Deed II"), only for Interlase to then convey them right back to Sopkin on January 27, 2024, by a third deed of gift, *see* Compl. ¶¶ 2–6; Compl. Ex. 27, ECF No. 1-1, at 64–68 (Jan. 27, 2024 Deed of Gift) ("Deed III"); Opp'n to MTD at 2–5, 11–13. Sopkin argues that, while active, the first deed of gift allowed her to sue on behalf of Interlase, and the second and third deeds of gift now allow her to bring both direct and derivative suit on its behalf. *See* Compl. ¶¶ 2–6; Opp'n to MTD at 2–5, 12–13.

On March 14, 2024, Lopatto removed this matter to this District based on diversity jurisdiction, 28 U.S.C. §§ 1332(a)(2), 1441(b), 1446(c); *see* NOR ¶¶ 3, 9, 11–18, then promptly moved to dismiss for lack of subject matter jurisdiction, *see* MTD Mem. at 10–18, and failure to state a claim, *see id.* at 11–12, 18–28. In response, Sopkin moves to remand, arguing that this court is without subject matter jurisdiction because, *inter alia*, the amount in controversy once again falls short of $75,000. *See* MTR at 2–3; MTS at 3. Despite this contention, Sopkin also moves for partial summary judgment on her sanctions-related claim, seeking an award for $62,854.24. *See* MPSJ at 2–4.

## LEGAL STANDARDS

**Subject Matter Jurisdiction**[4]

"Article III of the Constitution prescribes that '[f]ederal courts are courts of limited subject-matter jurisdiction' and 'ha[ve] the power to decide only those cases over which Congress grants jurisdiction.'"  *Bronner v. Duggan*, 962 F.3d 596, 602 (D.C. Cir. 2020) (alterations in original) (quoting *Al-Zahrani v. Rodriguez*, 669 F.3d 315, 317 (D.C. Cir. 2012)); *see Gunn v. Minton,* 568 U.S. 251, 256 (2013) ("'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'") (quoting *Kokkonen v. Guard. Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

A defect in "standing is a defect in subject matter jurisdiction."  *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987); *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (noting that "the core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III").  Furthermore, "[t]he defense *of res judicata* is [also] jurisdictional in character."  *Rizvi v. McClure*, 597 F. Supp. 2d 63, 66 (D.D.C. 2009) (citing *Stanton v. D.C. Ct. of Appeals*, 127 F.3d 72, 77 (D.C. Cir. 1997)).  Therefore, "a motion for dismissal based on res judicata properly falls under Federal Rule of Civil Procedure 12(b)(1)." *Id.*

To survive a challenge to subject matter jurisdiction, the plaintiff bears the burden of demonstrating a court's subject-matter jurisdiction.  *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015), *cert. denied*, 577 U.S. 1103 (2016); *see also Hertz Corp. v. Friend*, 559 U.S. 77, 96–97 (2010); *Thomson v. Gaskill*, 315 U.S. 442, 446 (1942).  When considering a motion to dismiss

---

[4] Because the court finds that it lacks subject matter jurisdiction over this matter, it does not reach Lopatto's arguments for failure to state a claim. *See U.S. ex rel. Settlemire v. Dist. of Columbia*, 198 F.3d 913, 920–21 (D.C. Cir. 1999).

under Rule 12(b)(1), a court must accept as true all uncontroverted material factual allegations contained in the complaint and "'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged' and upon such facts determine jurisdictional questions." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005); *Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004)).  A court need not accept inferences drawn by the plaintiff, however, if those inferences are unsupported by facts alleged in the complaint or amount to legal conclusions.  *See Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

To that end, in assessing a challenge to subject matter jurisdiction under Rule 12(b0(1), a court may consider documents outside the pleadings.  *See Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947); *Haase*, 835 F.2d at 906.  In doing so, a court does not convert the motion into one for summary judgment; "the plain language of Rule 12(b) permits only a 12(b)(6) motion to be converted into a motion for summary judgment" when a court considers documents extraneous to the pleadings.  *Haase*, 835 F.2d at 905.

**Remand**

State court civil actions may be removed to a United States district court by the defendant, provided the case could have originally been filed in federal court.  *See* 28 U.S.C. § 1441(a).  A defendant may remove an action to federal court when original subject matter jurisdiction exists in diversity.  *See id*. § 1441(b); *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987).  Diversity jurisdiction exists when the action involves parties from different states, and the amount in controversy exceeds $75,000.00 per plaintiff, exclusive of interest and costs.  *See* 28 U.S.C. § 1332(a); *Carden v. Arkoma Assocs.*, 494 U.S. 185, 187 (1990).

Court are obligated to construe federal removal statutes strictly to avoid federalism concerns, *see Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 107–09 (1941), and any ambiguities concerning the propriety of removal must be resolved in favor of remand, *Hood v. F. Hoffman–La Roche, Ltd.*, 639 F. Supp. 2d 25, 28 (D.D.C. 2009) (citing *Gasch v. Hartford Accident & Indem. Co.*, 491 F.3d 278, 281–82 (5th Cir. 2007)). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

A challenge to subject matter jurisdiction may be raised on a motion to remand. *See id*. A "party opposing a motion to remand bears the burden of establishing that subject matter jurisdiction exists in federal court." *Int'l Union of Bricklayers & Allied Craftworkers v. Ins. Co. of The West*, 366 F. Supp. 2d 33, 36 (D.D.C. 2005) (citation omitted); *see also Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97–98 (1921).

## DISCUSSION

Once again, as explained below, this court is without jurisdiction over any of Sopkin's claims.

### I.     Lost Patent-Royalty Payments

As discussed in *Sopkin IV*, Sopkin cannot pursue the $11,963,416 in patent royalty payments, allegedly lost due to Lopatto's failure to timely raise the surcharge theory. *See Sopkin*, 2023 WL 5833679, at *6–8. It is uncontroverted that, if owed, those payments belong entirely to Interlase, *see* Compl. ¶¶ 3, 64; Opp'n to MTD at 5–6, 8–11, and Sopkin has no standing to bring claims on its behalf, *see Sopkin*, 2023 WL 5833679, at *6–8. The shareholder standing rule bars Sopkin's direct claims, and the clear precedent recognizing her overall lack of standing bars claims *of any kind* by Sopkin for Interlase. *See id*.

9

## II.     Arbitration-Related Damages

Likewise, Sopkin has no standing to raise her claim for the $15,000 in arbitration-related damages. She broadly alleges that Lopatto "cost *Interlase* at least $15k" arising from Lopatto's alleged refusal to participate in LCIA proceedings. *See* Compl. ¶ 38 (emphasis added); *see also* Opp'n to MTD at 9 (insisting that the fee agreements were executed strictly for Interlase). In other words, Sopkin does not allege that she personally expended $15,000; instead, she contends that the entity is owed that amount. *See id*. Compl. ¶¶ 38, 40; *see also* Opp'n to MTD at 9. Thus, for the same reasons Sopkin is without standing to pursue the lost patent royalty payments, she is also without standing to pursue the arbitration-related damages on Interlase's behalf. *See Sopkin*, 2023 WL 5833679, at *6–8.

In addition, the arbitration-related damages are barred by collateral estoppel. *See Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (collateral estoppel bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim."). Although under the "curable defect" exception to collateral estoppel, a litigant "whose claim[ ] [was] dismissed on jurisdictional grounds" is not precluded from re-litigating that dismissal "if a material change following dismissal cured the original jurisdictional deficiency[,]" *Nat'l Ass'n of Home Builders v. EPA*, 786 F.3d 34, 41 (D.C. Cir. 2015), the alleged financial injuries arising from the LCIA proceedings occurred *prior to* the dismissal in *Sopkin IV*, *see, e.g.*, *Sopkin*, No. 22-cv-03300, at Compl. ("*Sopkin IV* Compl."), ECF No. 1, ¶ 57 (noting that Interlase raised legal malpractice claims against Lopatto in the LCIA six months before filing *Sopkin IV*, "but Lopatto reneged on his legal obligations to pay for parts of that arbitration" and those proceedings would be imminently dismissed without prejudice).

10

Accordingly, because the arbitration-related damages preceded the dismissal of *Sopkin IV*, they fail to qualify under the curable defect exception, and do not confer standing. *See Swanson Grp. Mfg. LLC v. Jewel*, 195 F. Supp. 3d 66, 75 (D.D.C. 2016) (finding that "pre-existing" or "ongoing" injuries "do not satisfy the requirements for the curable defect exception" to remedy standing); *Ricks v. Simons*, 759 F. Supp. 918, 921 n.4 (D.D.C. 1991) (finding that the plaintiff "could have foreseen that [an] issue would arise in later litigation[;]" therefore, collateral estoppel barred its subsequent litigation) (citing *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 468, n.6 (1982)).

Moreover, Sopkin's mere mention of the arbitration-related damages in *Sopkin IV*, without having formally raised them as a claim, does not suffice to salvage them. *See Nat'l Ass'n of Home Builders*, 786 F.3d at 43 (holding that a court's previous decision "cannot be used as a mere instruction manual on how [a plaintiff] might correct defects in its claim of standing by doing a better job of pleading preexisting facts and arguing the law more forcefully in a new case."); *Newdow v. Bush*, 355 F. Supp. 2d 265, 275 (D.D.C. 2005) (finding that "a mere 'defect in pleading' in the original complaint cannot be remedied through the 'curable defect' doctrine.") (quoting *Dozier v. Ford Motor Co.*, 702 F.2d 1189, 1192 (D.C. Cir. 1983)).

For all these reasons, Sopkin lacks standing to raise a claim for the arbitration-related damages.

### III.     Expert-Related Damages

Sopkin asserts that Lopatto owes her $30,000 in fees purportedly due to expert witness, Nelson. *See* Compl. ¶¶ 54, 66, 81. Nelson was retained in 2021 in *Sopkin III*, *see id.* ¶¶ 54, 66, 81, and her report was complete by November 5, 2021, *see* Nelson Rep. Once again, for the same reasons expressed above, the expert-related damages fail to qualify under the curable defect

11

exception, because the fees owed to Nelson, if any, were known prior to *Sopkin IV*, which was filed nearly a year later, *see Sopkin IV* Compl.

Furthermore, assuming Sopkin could overcome collateral estoppel, and that she is even a party to the relevant fee agreements, *compare* Opp'n to MTD at 9 (Sopkin arguing that the fee agreements were executed only for Interlase), *with* MTD Mem. at 4 n.3 (Lopatto arguing that the fee agreements were executed for Sopkin), she has also nonetheless failed to allege any injury arising from this claim and therefore lacks standing to raise it.

Federal courts have subject matter jurisdiction only if there exists a "case" or "controversy," and in the absence of any actual or threatened injury, no case or controversy exists. *See* U.S. Const. Art. III, § 2. The alleged "injury must be 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149–50 (2010)). Moreover, standing cannot be "based on . . . fears of hypothetical future harm that is not certainly impending." *Id.* at 417 (citing *Pennsylvania v. New Jersey*, 426 U.S. 660, 664 (1976) (per curiam); *Nat'l Fam. Planning & Reprod. Health Assn., Inc.*, 468 F.3d 826, 831 (D.C. Cir. 2006)).

Here, the fee agreements clearly state that "the client," not Lopatto, is responsible for payment of expert fees. *See* FA I ¶ 3; FA II ¶ 6. Lopatto attests that, despite that provision, he advanced "Ms. Nelson's expert witness fees in the amount of $20,000[,]" Decl. of John Lopatto ("Lopatto Decl."), ECF No. 8-25, ¶ 5, and that Sopkin has not reimbursed him, despite her obligation, *id.* ¶ 6. In response, Sopkin speculates that Nelson may be owed additional payment, and surmises that any outstanding fees "*may* cost money to Sopkin if Nelson's testimony as it concerns the damages is required in this case." *See* Opp'n to MTD at 13 (emphasis added); *see*

12

*also* Compl. ¶¶ 54, 66.  But Lopatto has attested that he has paid Nelson's fees, *see* Lopatto Decl. ¶ 5, and there is no allegation that Nelson has demanded any payment from Sopkin.  And, if remaining fees are still owed to Nelson, or if her testimony should be later required—both completely conjectural premises—either Sopkin or Interlase would be responsible for payment, not Lopatto.  *See* FA I ¶ 3; FA II ¶ 6.

Because Sopkin has failed to present a dispute "of sufficient immediacy and reality[,]" *Golden v. Zwickler*, 394 U.S. 103, 109 (1969), and relies on a "hypothetical state of facts[,]" *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 241 (1937) (collecting cases), contradicted by the record, she has no standing to seek the expert-related damages, and for all of the above-stated reasons, this court is without subject matter jurisdiction over that claim.

### IV.  Deeds of Gift

Sopkin's new theory that the "deeds of gift" allow her to bring suit for Interlase is without merit.  As repeatedly discussed, multiple courts have determined that Sopkin has no standing to bring claims on behalf of Interlase.  *See Sopkin*, 2023 WL 5833679, at *3–4, 9.  Because of her original association with Lucre, she was dispossessed of any legal interest in Interlase, and her subsequent attempts to regain ownership were unavailing.  *See id.*  Those previous decisions continue to have preclusive effect.  *See id.* at *7; *see also U.S. Bank Nat'l Ass'n v. Poblete*, No. 15-312, 2016 WL 1089217, at *7, *11–12, *11 n.12 (D.D.C. Mar. 18, 2016) (applying offensive collateral estoppel in fifth lawsuit, and holding that defendant, who claimed ownership of real property as a trustee, could not oppose plaintiff's action to quiet title against that property despite having since registered a modified deed, because the D.C. Circuit previously determined that the trust lacked valid title to the property and defendant thus lacked standing).

Moreover, even if these deeds of gift could, on their own, defeat collateral estoppel, they are defective for several reasons. The first deed of gift was purportedly conveyed to Sopkin on October 25, 2022, just two days before she filed *Sopkin IV* in this court. *Compare* Deed I, *with Sopkin IV* Compl., ECF No. 1. Despite the central issue of her standing, Sopkin never once mentioned the first deed of gift in *Sopkin IV*, a fact she admits, *see* Compl. ¶ 2–3; Opp'n to MTD at 2–5, 11–13; she raised it for the very first time with the D.C. Circuit while briefing her appeal of *Sopkin IV*, *see Sopkin*, 2024 WL 251537, at *1 (noting that Sopkin "argue[d] for the first time in her opening brief that she ha[d] standing . . . pursuant to a deed of gift purportedly executed days before the underlying complaint was filed. This theory of standing was not raised in district court and [was] therefore forfeited."). It is unclear why Sopkin failed to introduce—or even reference—the first deed of gift in *Sopkin IV*, particularly given its purported recency, and her otherwise painstakingly detailed accounts of Interlase's history and chain of ownership.

In any event, despite her arguments to the contrary, *see* Opp'n to MTD at 2–4, Sopkin's reliance on the first deed of gift *post factum* does not fall under the curable defect exception, *see Yamaha Corp of America v. U.S.*, 961 F.2d 245, 254–55 (D.C. Cir. 1992) ("[Issue] [p]reclusion cannot be avoided simply by offering evidence in the second proceeding that could have been admitted, but was not, in the first.") (citation omitted), *cert. denied*, 506 U.S. 1078 (1993); *Sec. Indus. Ass'n v. Bd. of Govs.*, 900 F.2d 360, 364 (D.C. Cir. 1990) (a plaintiff may not raise new argument in second proceeding if it was never made in first proceeding; so long as argument could have been made, it is precluded)); *Dozier*, 702 F.2d at 1192 (finding that plaintiff could not overcome collateral estoppel to cure standing in diversity action by later changing his "sworn recitation of past facts.") (fn. omitted); *Campaign Legal Ctr. v. Fed. Elec. Comm.*, No. 22-cv-3319, 2023 WL 6276634, at *11 (D.D.C. Sept. 26, 2023) (finding that the plaintiffs' previous

14

"failure to highlight [] information" that could have plausibly cured their defect in standing was "puzzling" and that the prohibition against introduction of that information in a subsequent lawsuit "is the reason issue preclusion exists."); *see also UMC Develop., LLC v. Dist. of Columbia*, 401 F. Supp. 3d 140, 156–57 (D.D.C. 2019) (finding that "only claim preclusion, not issue preclusion, requires a 'final, valid judgment on the merits[,]' ") (quoting *Nat. Res. Def. Council v. EPA*, 513 F.3d 257, 260 (D.C. Cir. 2008); *Nat'l Ass'n of Home Builders*, 786 F.3d at 41) (a "jurisdictional dismissal does not involve an adjudication on the merits," but it still "adjudicate[s] the court's jurisdiction, and a second complaint cannot command a second consideration of the same jurisdictional claims.")).

Sopkin, appearing to recognize this obstacle, focuses largely on the third deed of gift. *See* Compl. ¶ 6; Opp'n to MTD at 4–5, 11–13. The second deed of gift, conveying the rights back to Interlase, was purportedly executed the day after the D.C. Circuit affirmed *Sopkin IV*, *compare* Deed II, *with* Mandate, and then the third deed of gift was conveyed to Sopkin mere days later, *see* Deed III. But the third deed of gift falls well short of overcoming the shareholder standing rule and providing Sopkin derivative status. *See Sopkin*, 2023 WL 5833679, at \*6–7. The third deed of gift was executed well after Lopatto's alleged wrongful acts; therefore, Sopkin is barred by the contemporaneous ownership requirement of the shareholder standing rule, which mandates that a plaintiff bringing a derivative suit must have been an owner at the time of the challenged acts or omissions. *See First Am. Corp. v. Al-Nahyan*, 17 F. Supp. 2d 10, 20 (D.D.C. 1998).

The contemporaneous ownership requirement "is designed to avoid so-called 'strike suits' and other speculative litigation." *Id.* It is recognized federally, *see* Fed. R. Civ. P. 23.1(a)–(b)(1), and in all three local jurisdictions relevant to this case—the District of Columbia,

15

Georgia, and Virginia, and extends to limited partnerships, *see* D.C. Code §§ 29–301.02(22), 29–305.51(A)(1); D.C. Super. Ct. R. 23.1(a)–(b)(1); *Trust Agreement of Steven M. Sushner v. C.A. Harrison Comanies, LLC*, No. 22-cv-2837, 2023 WL 6313507, at *6, *11 (D.D.C. Sept. 28, 2023) (applying D.C. law); *Levant v. Whitley*, 755 A.2d 1036, 1047 n.14 (D.C. 2000) ("[D.C. Super. Ct.] Rule 23.1 is virtually identical to Fed. R. Civ. P. 23.1."); Ga. Code §§ 14-2-140(11), 14-2-741(1); *Hurt v. Cotton States Fertilizer Co.*, 145 F.2d 293, 295 (5th Cir. 1944) (applying federal and Georgia law), *cert. denied sub nom. Cotton State Fertilizer Co v. Hurt*, 324 U.S. 844 (1945); *Smith v. Coolidge Banking Co.*, 92 S.E. 519, 519 (Ga. Sup. Ct. 1917); Va. Code §§ 13.1–672.1(1), 50–73.62, 50-73.63; *Milstead v. Bradshaw*, No. C96–1498, 1997 WL 33616661, at *2 (Va. Cir. 1997).

Here, Lopatto's alleged wrongdoing occurred *years* before the third deed of gift. For example: (1) Interlase attempted to arbitrate against Lopatto for legal malpractice in "early 2022," *see* Compl. ¶ 32, (2) *Sopkin III* was dismissed on March 8, 2022, *see Sopkin*, No. CL-20004925-00, at Final Order (entered Mar. 8, 2022); and (3) Lopatto withdrew his appearance in *Sopkin I* on August 3, 2022, *see* Sopkin, No. 16-cv-01146, ECF No. 175 (Order Granting Lopatto's Motion to Withdraw as Attorney). Because Sopkin's ownership was not contemporaneous,[5] she cannot bring a derivative suit.

Furthermore, these deeds of gift did not transfer Interlase's interests to Sopkin by operation of law, because the conveyances were not made to Sopkin by an existing owner, *see* Fed. R. Civ. P. 23.1(b)(1); D.C. Sup. Ct. R. 23.1(b)(1); D.C. Code 29–305.51(1); Ga. Code § 14-2-741(1); Va. Code § 13.1-672.1(2)–(3). They were, for all intents and purposes, executed

---

[5] To the extent Sopkin relies on the first deed of gift, its conveyance also occurred after Lopatto's alleged acts and omissions. *See* Deed I.

between Sopkin and herself, without any exchange of consideration. *See* Deed I; Deed II; Deed III. Moreover, Sopkin did not possess any ownership rights to convey. *See Sopkin*, 2023 WL 5833679, at *3, *9; *see also* Compl. ¶¶ 2 ("There was a period of time between October 25, 2022, and January 25, 2024, that Sopkin owned [the patents] and rights to same, but she did not own any of that property or rights to same, at the very least, prior to October 25, 2022, and between January 25 and January 27, 2024."), ¶ 3 (noting that she is not asserting the "theory of her underlying ownership"). Simply put, these conveyances are null, and thus fail to establish that Sopkin can fairly and adequately represent Interlase's interests. *See* Fed. R. Civ. P. 23.1(a); D.C. Sup. Ct. R. 23.1(a); D.C. Code 29–305.51(2); Ga. Code § 14-2-741(2); Va. Code § 13.1-672.1(4).

Additionally, per Sopkin's own admission, the deeds were executed specifically to cure defects in her standing, *see* Compl. ¶¶ 2–3; Opp'n to MTD at 2–4, but a conveyance conducted for the purpose of conferring jurisdiction when it is otherwise lacking is "collusive" and untenable. *See* Fed. R. Civ. P. 23.1(b)(2); D.C. Sup. Ct. R. 23.1(b)(2); *see also First Am. Corp.*, 17 F. Supp. 2d at 20 (finding that the court is obligated to "look beyond the corporate form to examine the economic realities of a transfer of ownership so as to prevent an abuse of the legal fiction that treats a corporation as a separate juridical entity.").

Indeed, this is not the first time that Sopkin has unsuccessfully attempted this maneuver to cure her standing problems. *See Sopkin*, 746 Fed. Appx. at 161 n.8. In affirming *Sopkin I*, the Fourth Circuit found that Sopkin had not met the requirements of Federal Rule 23.1 because she "obtained her interest in Interlase . . . solely for the purpose of litigation[,]" and the record instead reflected that "Interlase's assets had [already] been liquidated in the bankruptcy proceedings by the time that Dr. Fox purportedly assigned his interest in Interlase to Sopkin."

*Id.* Sopkin cannot now reattempt the same stratagem here. *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 556 (1949) (holding that a court shall not "permit itself to be used to litigate a purchased grievance or become a party to speculation in wrongs done to corporations[,]" and requiring plaintiff to show, under Fed. R. Civ. P. 23.1, "that an action is not a collusive one to confer jurisdiction and to set forth the facts showing that the plaintiff has endeavored to obtain his remedy through the corporation itself."); *see Sopkin*, 746 Fed. Appx. at 160–61 n.7 (same) (collecting cases).

For all of these reasons, the deeds of gift, whether direct or derivative, fail to overcome Sopkin's defects in standing to bring suit for Interlase[6].

## V.   Sanctions-Related Damages & Remand

Once again, all that remains is Sopkin's sanctions-related claim totaling $62,854.24. *See* Compl. ¶¶ 1–4, 14–15, 31–37, 40–44, 54–55, 57–72, 75–80, 83–84. The court once more finds that, while Sopkin still appears to have standing to bring that claim because the sanctions were awarded against her individually, *see Sopkin*, 2022 WL 4002310, at *1, *1 n.1, *3, those damages are more than $12,000 short of the $75,000 requirement to satisfy the requirements for diversity jurisdiction, *see* 28 U.S.C. § 1332(a); *see also Sopkin*, 2023 WL 5833679, at *9 (finding same).

However, unlike *Sopkin IV*, this matter did not originate in this court. Lopatto removed this matter to this court, but then challenged subject matter jurisdiction—an inquiry that cuts both ways, particularly because Sopkin has also moved to remand. Once challenged, a removal

---

[6] More generally, Sopkin, who is once again proceeding *pro se*, cannot sue on behalf of Interlase, and Interlase, as an artificial entity, can neither proceed *pro se*, nor can it apply to proceed IFP. *See Sopkin*, 2023 WL 5833679, at *8 (citing cases).

based on diversity is only proper "'if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds' the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88 (2014) (quoting 28 U.S.C. § 1446(c)(2)(B)).

Based on the evidence before it, and for all the reasons stated above, this court finds that the amount in controversy is not satisfied for federal diversity jurisdiction. "When it appears that a district court lacks subject matter jurisdiction over a case that has been removed from a state court, the district court *must* remand the case." *Rep. of Venezuela v. Philip Morris Inc.*, 287 F.3d 192, 196 (D.C. Cir. 2002) (emphasis added) (citing 28 U.S.C. § 1447(c)); *see Randolph v. ING Life Ins. and Annuity Co.*, 486 F. Supp. 2d 1, 10 (D.C. Cir. 2007) (holding that, in a removed case where the plaintiff lacked standing, the matter had to be remanded, and not dismissed, given the clear "command" and "plain text of 28 U.S.C. § 1447(c)[.]")).

This court is "[c]ognizant of the fact that the Superior Court for the District of Columbia may also conclude that [Sopkin] lack[s] the requisite standing to pursue" the bulk of her "claims in that forum," but neither the D.C. Circuit nor the Supreme Court have recognized a "futility exception" associated with § 1447(c); therefore, this court must "leave such a decision to the discretion of the Superior Court, and remand this case[,]" *See Randolph*, 486 F. Supp. 2d at 10–11; *see also Int'l Primate Protection League v. Admins. of Tulane Educ. Fund*, 500 U.S. 72, 89 (1991) (highlighting the mandatory nature of § 1447(c) and expressing reluctance to create a futility exception). This principle is particularly relevant here because, assuming *arguendo* the Superior Court agrees with this court's conclusions, Sopkin *may* still have standing in Superior Court for her sanctions-related claim.

## CONCLUSION

19

For the reasons set forth above, Sopkin's Motion to Remand is GRANTED. Lopatto's Motion to Dismiss, Sopkin's Motion to Strike the Motion to Dismiss, and Sopkin's Motion for Partial Summary Judgment, shall all be HELD IN ABEYANCE to be decided by the Superior Court upon remand. A separate Order is issued contemporaneously.

Date:  September 19, 2024

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge